UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLAUDYCHEL LEYVA,

        Plaintiff,

v.                        Case No. 3:22-cv-00541-BJD-LLL

H. GEORGE OWOJUYIGBE,
et al.,

        Defendants.
_____

## ORDER OF DISMISSAL WITHOUT PREJUDICE

Plaintiff, Claudychel Leyva, an inmate of the Florida penal system, initiated this action pro se by filing a complaint for the violation of civil rights (Doc. 1; Compl.) and a motion to proceed in forma pauperis (Doc. 2). Plaintiff names four medical-provider Defendants related to medical care he received at two different correctional institutions between August 2017 and May 2018. Plaintiff alleges he received treatment at Columbia Correctional Institution (CCI) in 2017 for an "old right shoulder injury." Compl. ¶ 1. Defendant H. George Owojuyigbe reviewed Plaintiff's chart and ordered an x-ray on August 11, 2017, before seeing Plaintiff for an evaluation on August 31, 2017.[1] Id. ¶¶

---

[1] Plaintiff asserts Defendant H. George Owojuyigbe is "not a medical doctor," Compl. ¶ 10, but records Plaintiff provides with his complaint show this Defendant indeed is a doctor and the Medical Director for CCI at the relevant times. See, e.g., Doc. 1-1 at 1. The doctor's stamp signature reads, "H.

2-3. Defendant Dr. George ordered "very strong pain killers" for Plaintiff, referred Plaintiff to a doctor at the Reception and Medical Center (RMC), and wrote Plaintiff a medical pass for a button-up shirt (rather than a pull-over). Id. ¶¶ 4-5. However, Plaintiff complains, Defendant Dr. George did not write Plaintiff a bottom-bunk pass. Id. ¶ 6.

On December 30, 2017, four months after Plaintiff treated with Defendant Dr. George, Plaintiff allegedly fell from the top bunk, suffering an injury to his forehead, which required stitches. Id. ¶¶ 7-8. Plaintiff also injured his other shoulder, saying he "felt something snap in his upper left shoulder area." Id. ¶ 8. He alleges he was moved to the infirmary for observation. Id. Defendant Dr. George was not at the prison at the time—it was 9:30 p.m.—but was contacted and ordered that Plaintiff be observed for twenty-three hours. Id. ¶¶ 9-10. Defendant Dr. George personally evaluated Plaintiff the next day and ordered x-rays and "temporary 7-day passes." Id. ¶ 11. Plaintiff alleges Defendant Dr. George "ma[d]e no determination to order . . . immediate medical attention" but rather discharged Plaintiff from the infirmary. Id.

Plaintiff alleges he was pulled from his cell on January 5, 2018, for left shoulder and skull x-rays to be conducted by Defendant Jane Doe, an x-ray technician. Id. ¶ 12. Before beginning the x-rays, Defendant Doe dropped the

---

George, M.D., MPH." Id. Accordingly, the Court will reference this Defendant as "Dr. George."

laptop used for the procedure, breaking the screen. Id. ¶ 13. Despite the broken screen, Defendant Doe insisted on attempting to complete the x-rays. Id. ¶14. Additionally, Plaintiff alleges Defendant Doe asked an "untrained" officer to assist with the x-rays. Id. ¶ 15. Plaintiff contends the situation resulted in a poor shoulder x-ray, and the skull x-ray could not be performed at all. Id. ¶ 16.

Plaintiff filed a grievance to complain about "the faulty x-ray procedure." Id. ¶ 18. Plaintiff alleges Defendant Dr. George was the person responsible for responding to all formal grievances at the institution, so Dr. George should have been aware of the incident. Id. ¶ 19. He contends, "No one in the medical department at [CCI] ma[de] an attempt to investigate or correct the situation." Id. In response to Plaintiff's grievance, Defendant Dr. George directed Plaintiff to submit a sick-call request. Id. ¶ 20. Plaintiff did so, but he complains he was not seen until February 9, 2018, twenty-four days after he submitted the request. Id. On February 9, 2018, Defendant Dr. George examined Plaintiff, ordered more x-rays and strong pain medication, and gave Plaintiff new medical passes. Id. ¶ 21. On February 20, 2018, Plaintiff was transferred from CCI to the RMC and then ultimately sent to Hamilton Correctional Institution (HCI) on February 27, 2018.[2] Id. ¶¶ 21-22.

---

[2] While Plaintiff alleges he was housed at three correctional institutions over the relevant time, he complains about the medical treatment he received at two institutions: CCI and the RMC. See Compl. at 4.

3

Plaintiff alleges he did not immediately receive pain medication or have x-rays taken, per Defendant Dr. George's February 9, 2018 orders, though he does not attribute that oversight to Defendant Dr. George. Id. ¶ 23. The day after he arrived at HCI, Plaintiff had x-rays done, but he still was not provided medication. Id. ¶ 24. Plaintiff alleges he submitted a formal grievance to alert Defendant Dr. George that his orders "were not carried out," but Plaintiff does not say at which institution he submitted the grievance. Id. ¶ 25.[3] Plaintiff says the February 28, 2018 x-rays showed he had a fracture in the left scapula. Id. ¶ 26. He received treatment at HCI for the fracture, and then was sent to the RMC on March 16, 2018. Id. ¶¶ 27-28.

At the RMC, Plaintiff treated with Defendants Ryan and Winters, who Plaintiff alleges ordered an x-ray on March 16, 2018, and a CT scan on April 12, 2018. Id. ¶¶ 28-31. Then, on May 25, 2018, Defendants Ryan and Winters "work[ed] together to perform[] surgery." Id. ¶¶ 28, 33-34. Plaintiff faults Defendants Ryan and Winters for not performing the surgery sooner because the March 16, 2018 radiology report had the word "'ALERT' plastered across the page." Id. ¶ 30. Plaintiff alleges that, despite knowing the severity of his

---

[3] The records Plaintiff attaches to his complaint show he submitted a grievance at CCI on February 19, 2018, the day before his transfer, complaining that "nothing ha[d] been done" after his February 9, 2018 appointment. Doc. 1-4 at 2. He submitted grievances at HCI on February 28, 2018, on March 7, 2018, and again on March 30, 2018, complaining that he had not yet received his medication. Id. at 4; Doc. 1-5 at 2, 4.

4

injury, Defendants Ryan and Winters "delay[ed] [his surgery] almost forty-five (45) days." Id. ¶ 33. After surgery, Plaintiff underwent physical therapy, but he alleges he did not recover the same range of motion as he had before the injury. Id. ¶34.

The Prison Litigation Reform Act (PLRA) requires a district court to dismiss a complaint if the court determines the action is frivolous, malicious, or fails to state a claim on which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). With respect to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, so courts apply the same standard in both contexts. Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997). See also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" will not suffice. Id. (quoting Twombly, 550 U.S. at 555). Moreover, a complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir.

2001) (quoting In re Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A Sept. 8, 1981)). In reviewing a complaint, a court must accept the plaintiff's allegations as true, liberally construing those by a plaintiff proceeding pro se, but need not accept as true legal conclusions. Iqbal, 556 U.S. at 678.

Plaintiff's complaint is subject to dismissal under the PLRA because he fails to "state a claim to relief that is plausible on its face." See id. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that "a person" acting under the color of state law deprived him of a right secured under the United States Constitution or federal law. See 42 U.S.C. § 1983. Plaintiff contends Defendants violated his Eighth and Fourteenth Amendment rights by providing constitutionally inadequate medical care at CCI and the RMC.

When a constitutional amendment "provides an explicit textual source of constitutional protection," that amendment guides the analysis, "not the more generalized notion of 'substantive due process.'" Graham v. Connor, 490 U.S. 386, 395 (1989). A claim for deliberate indifference to a serious illness or injury is cognizable under § 1983 as an Eighth Amendment violation. See Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). Because Plaintiff alleges Defendants "ignore[ed] [his] undue suffering" for about six months, Compl. at 5, his claims arise under the Eighth Amendment, not the Fourteenth Amendment.

To state a plausible Eighth Amendment violation, a plaintiff must "allege that the prison official, at a minimum, acted with a state of mind that

constituted deliberate indifference." Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (describing the three components of deliberate indifference as "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence"). But when prison physicians provide medical care for prisoners, "federal courts are generally reluctant to second guess [their] medical judgments." Hamm v. DeKalb Cnty., 774 F.2d 1567, 1575 (11th Cir. 1985). As such, allegations of medical negligence, including negligent diagnosis or treatment, do not state a valid claim for deliberate indifference under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 106 (1976). The Supreme Court has stressed, "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. "Medical treatment violates the [E]ighth [A]mendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)).

Plaintiff does not allege facts permitting the reasonable inference Defendants provided medical care that was "so grossly incompetent … as to shock the conscience." Id. On the contrary, each Defendant provided treatment for Plaintiff. For Plaintiff's right and left shoulder injuries, Defendant Dr. George not only ordered diagnostic tests in the form of x-rays, but also

7

prescribed "very strong pain killers" and medical passes, and referred Plaintiff to be seen by a doctor at the RMC. Compl. ¶¶ 3-5, 10-11, 21. Plaintiff's assertions that Defendant Dr. George should have given him a bottom bunk pass in August 2017, should have investigated the "faulty x-ray procedure" in January 2018, or should have followed up to ensure his February 9, 2018 orders were carried out suggest either negligence or a mere disagreement with treatment decisions. Such allegations do not support a deliberate indifference claim. See Harris, 941 F.2d at 1505 ("[A] simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [does not] support a claim of cruel and unusual punishment.").

Additionally, accepting as true that Plaintiff was not seen in sick call as quickly as he thought he should have been after the "faulty" x-ray incident in early 2018, Plaintiff's grievance records belie his assertion that it was a twenty-four-day delay. Those records show Plaintiff was seen in sick call on January 22, 2018, "regarding [his] shoulder pain." Doc. 1-2 at 1. On that day, Plaintiff treated with a nurse, not Dr. George, but he was "referred back to the physician." Doc. 1-2 at 1. See also Doc. 1-3 at 1. When Defendant Dr. George did see Plaintiff on February 9, 2018, the care provided cannot be described as cursory or even negligent: Plaintiff alleges Defendant Dr. George examined him, ordered three x-rays, prescribed pain medication, and gave Plaintiff "new

8

medical passes." Compl. ¶ 21. It also appears Defendant Dr. George arranged for Plaintiff to be transferred because Plaintiff was sent to the RMC shortly thereafter. Id. ¶ 21-22.

As for Defendant Doe, accepting as true that she tried to obtain an x-ray using a broken laptop and the help of an untrained officer, such facts suggest negligence, not deliberate indifference. If anything, Defendant Doe's insistence on trying to complete the x-ray even after having broken the laptop would suggest the opposite of deliberate indifference.

Finally, Plaintiff alleges no facts suggesting Defendants Ryan or Winters were deliberately indifferent to his serious medical needs. These Defendants ordered diagnostic tests, performed surgery, and referred Plaintiff to physical therapy to help his post-surgical recovery. Id. ¶¶ 28-29, 31, 34. Plaintiff's subjective belief that the surgical procedure should have been done more quickly does not suggest the doctors who performed the surgery were deliberately indifferent to his serious medical needs. Plaintiff asserts no facts suggesting the doctors delayed his surgery for non-medical reasons.

In short, the facts Plaintiff alleges show all Defendants provided treatment for him—they did not ignore his injury or his pain. What Plaintiff disputes is the type of treatment provided or the manner in which it was provided. He essentially asks the Court to "second guess [the Defendants'] medical judgments." Hamm, 774 F.2d at 1575.

Even if Plaintiff had stated a plausible deliberate indifference claim against some of the Defendants, some of his claim likely would be time-barred. A complaint brought pursuant to § 1983 is governed by the forum state's residual personal injury statute of limitations. Owens v. Okure, 488 U.S. 235, 236 (1989). See also Wallace v. Kato, 549 U.S. 384, 387 (2007). In Florida, a four-year limitations period applies. See Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003) (per curiam). Plaintiff complains about conduct that occurred as far back as 2017, or more than four years before he filed his complaint on May 13, 2022. Thus, any claims arising out of conduct that occurred more than four years ago would be untimely. See id.

Accordingly, it is

**ORDERED:**

1. This case is **DISMISSED without prejudice**.

2. The **Clerk** shall enter judgment dismissing this case without prejudice, terminate any pending motions, and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of May 2022.

                                              BRIAN J. DAVIS
                                     United States District Judge

Jax-6
c:    Claudychel Leyva